UNITED STATES

v.

**Wendall P. ROBERTSON, 498 68 4321, First Lieutenant (0–2), U.S. Marine Corps Reserve.**

**NMCM 83 2969.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 4 May 1983.

Decided 31 Jan. 1984.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

LT Louis F. Sadler, JAGC, USNR, Appellate Defense Counsel.

LT Michael P. Cogswell, JAGC, USNR, Appellate Government Counsel.

Before GORMLEY, Senior Judge, and KERCHEVAL and LECORNU, JJ.

LECORNU, Judge:

In consonance with his pleas before a general court-martial composed of members, appellant was convicted of two specifications of attempting wrongfully to possess and use cocaine, two specifications of wrongfully soliciting the distribution of cocaine, one specification of wrongfully soliciting the distribution of marijuana, and one specification of wrongful possession of cocaine with intent to distribute in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934. He was sentenced to be confined at hard labor for 5 years, to forfeit all pay and allowances, and to be dismissed from the Naval Service. The convening authority approved the findings and the sentence, but reduced the confinement to 2 years in accordance with the pretrial agreement. Before this Court, appellant has assigned nine errors. Although none of the assignments has merit, we believe that five of them warrant discussion.

■ The first assignment contends that the military judge erred by failing to advise appellant of his allocution rights during the sentencing stage of the trial. It is further argued that this error was materially prejudicial because the trial counsel was able to obtain damaging admissions during cross-examination of appellant on his sworn statement to the members. It is undisputed that the trial judge overlooked the requirements of paragraph 53h, Manual for Courts-Martial, 1969 (Rev.) (MCM). This omission was recognized by the judge at some point after the trial, and a proceeding in revision was convened to determine whether the error was of such a nature as to require a rehearing on the sentence.

During the sentencing portion of the trial, the defense presented considerable evidence to the members, including actual and stipulated testimony of character witnesses, documentary evidence in the form of letters and military records, and the sworn testimony of appellant. There can be no question that appellant understood many of his rights at this stage of the trial. Of understandable concern to the military judge, however, was whether appellant, at the time he testified, knew of his right to present unsworn testimony. When pressed on this point during the revision proceeding, appellant was uncertain. Surprisingly, neither the civilian defense counsel, a former Marine Corps judge advocate, nor detailed counsel could recall whether appellant had been advised of this right. Faced with these memory lapses, the military judge conceded the possibility that appellant was unaware of his right to make an unsworn statement. The judge concluded, however, that his error in failing to so advise appellant was not prejudicial to appellant's substantial rights.

Our examination of the record of trial in its entirety convinces us that the military judge was correct. The defense strategy, as acknowledged by the civilian defense counsel during the revision hearing, contemplated presenting appellant to the members as a candid individual with nothing to hide. An unsworn statement by appellant would have seriously undermined this strategy. We doubt that appellant was not informed at some point of this alternative. More likely, both counsel and appellant believed that it would be unthinkable, under the circumstances, for a commissioned officer not to take the stand under oath. In all probability, the notion of making an unsworn statement was rejected out of hand. Nonetheless, we will treat the military

judge's omission as error and test for prejudice.

The admissions obtained by the trial counsel during the brief cross-examination of appellant simply do not support the contention that the error was prejudicial. The only matter brought out by the trial counsel, which had not been raised during direct examination, was appellant's admission that he was aware of the Marine Corps Commandant's policy with regard to drugs and had assured his superiors that he would vigorously enforce the policy. Appellant is hardly in a position to complain over this disclosure because he had earlier stipulated that a defense character witness would testify, *inter alia,* that appellant was aware of the policy. We find no prejudice to appellant's substantial rights and reject the assignment. *United States v. Koek,* 6 M.J. 540 (N.C.M.R.1978).

■ The second assignment of error urges that the civilian defense counsel's sentencing argument, in which he conceded the appropriateness of dismissal from the service, deprived appellant of effective assistance of counsel. Appellant's brief cites us to a number of the leading cases in which defense counsel's arguments have been challenged and found wanting. These precedents, however, do not support appellant's contention. As the Court of Military Appeals recently explained in *United States v. Volmar,* 15 M.J. 339 (C.M.A.1983), "[these] cases concerned a situation where there appeared to be a reasonable likelihood that court members might consider retention in the service as an alternative to a punitive discharge." *Id.* at 343. In the instant case, it strains credulity to suggest that the members would consider retaining a commissioned officer, who stood convicted of six drug offenses, most of them in consort with an enlisted Marine, and who also admitted to other instances of unlawful drug use. The length of confinement imposed unmistakably supports this conclusion. Significantly, appellant did not expressly state during his sworn testimony before the members that he desired to remain in the Marine Corps. He also did not

object to the civilian defense counsel's argument on sentence. Under these circumstances, it is readily apparent that the civilian defense counsel recognized that he could be most effective "by proposing to the sentencing authority an alternative for which there [was] some reasonable possibility of acceptance." *Id.* at 342. This he sought to do by urging the members to spare his client lengthy confinement. Although only modestly successful in this effort, his argument in no manner deprived appellant of effective assistance of counsel. The assignment is, therefore, without merit.

■ The third assignment contends that appellant was materially prejudiced by the trial counsel's references to the Marine Corps Commandant's drug policy during cross-examination of appellant and sentencing argument. The fourth assignment claims that the military judge's failure *sua sponte* to give a limiting instruction concerning these references amounted to prejudicial error. We will address these assignments in tandem.

In a long line of decisions, the Court of Military Appeals and the Courts of Military Review have consistently condemned improper references to command policy before sentencing bodies. These cases are well known to us, are scrupulously followed, and do not require recitation here. By leave of this Court, however, appellant has brought to our attention, by way of a motion to cite additional authority, the recent summary disposition of the Court of Military Appeals in *United States v. Reitz,* 17 M.J. 51 (C.M.A. 1983). In *Reitz,* the trial counsel's sentencing argument made reference to the drug abuse policy of the Department of the Navy and the Chief of Naval Operations. A panel of this Court, after examining the responses of the members during *voir dire,* concluded that the members were not susceptible to improper influence by the references in question, found no prejudice, and affirmed. In its summary reversal of this Court's decision, the Court of Military Appeals noted only that the challenged remarks constituted the same error as was

condemned in *United States v. Grady,* 15 M.J. 275 (C.M.A.1983).

We are not persuaded, nor do we think that the Court of Military Appeals perceived, that *Reitz* adds anything new to this settled area of the law. We, therefore, look to *Grady* and its precursors for the principles to guide our disposition of the issues before us. In so doing, we note our belief that, regardless of the wealth of judicial precedent, each case must be decided on its own facts and circumstances. We are convinced, moreover, that the decision necessarily turns on whether, in light of all the facts and circumstances, the references to command policy were *improper. Grady,* although factually distinguishable from the instant case, provides a clear standard for making this determination. "What is improper is the reference to such policies before members in a manner which in effect brings the commander into the deliberation room." *Id.* at 276. We proceed, therefore, to examine the record of appellant's trial to determine if, as appellant now avers, the trial counsel attempted "to put the Commandant of the Marine Corps into the deliberation room."

The Commandant's policy "declaring war on illegal drug use" was first mentioned to the members by the civilian defense counsel during *voir dire.* Counsel questioned the members extensively to ensure that no member felt compelled to vote for dismissal because of the Commandant's policy. He obtained responses demonstrating that all members could, and would in appropriate circumstances, vote for a sentence that did not include dismissal. The military judge also questioned the members along the same lines and obtained identical responses. The judge then instructed the members not to consider the Commandant's policy for any purpose during the sentencing phase of the trial and obtained assurances from the members that they could comply with that instruction. As previously noted, another reference to the Commandant's policy is found in the stipulated testimony of a Marine lieutenant colonel with whom appellant served during an overseas deployment. In addition to containing favorable comments regarding appellant's performance of duty, the stipulation stated: "[appellant] was aware of Marine Corps drug policy, but because of his deployment his training in that area was probably not as great as most." Mention of the Commandant's policy next occurred during the trial counsel's cross-examination of appellant as discussed in connection with the first assignment, *supra.* Finally, in argument on sentence, the trial counsel made several references to appellant's knowledge of the Marine Corps drug policy and conscious decision to violate it.

Our examination of the above-described references to the Commandant's policy within the context of the entire record, including the purposes underlying their occurrence, convinces us that the trial counsel did not bring the Commandant of the Marine Corps or any other command influence into the deliberation room. Discussion of the subject during *voir dire* was entirely proper, if not essential. In view of the wide publicity the Commandant's policy has received, it was incumbent upon both counsel and the military judge to explore the possibility of improper influence on the members prior to proceeding with sentencing. No amount of discussion during *voir dire,* however, can lend legitimacy to otherwise improper references by the trial counsel later in the trial. Similarly, the defense does not, by exercising its right to conduct full *voir dire,* open the door to improper references to command policies by the trial counsel. Accordingly, we evaluate the propriety of the trial counsel's remarks wholly apart from what transpired during *voir dire.*

Our conclusion that the trial counsel's references to the Commandant's policy were not improper derives from what we perceive to be their entirely legitimate purpose; namely, to counter contentions advanced by the defense. Understandably, appellant could not plausibly maintain to the members that he was unaware of the policy, and he did not do so. On the contrary, by way of the stipulated testimony discussed *supra,* knowledge of the policy

was conceded, but doubts suggested as to the adequacy of the training received on the subject. It is important to note that, although this stipulation was not published to the members until after appellant's sworn testimony, it was received into evidence beforehand. As the civilian defense counsel made clear in closing argument, the defense was attempting to convince the members that appellant was a "foolish young man" who had exhibited an "incredible lack of judgment." Significantly, appellant concluded his sworn testimony on direct examination by stating, "I've learned a lesson, and I know now, that I didn't then."

Confronted with this strategy, the trial counsel established through cross-examination of appellant, and later argued to the members, that appellant was fully aware of the Commandant's policy and his responsibilities as a commissioned officer to support it. Appellant's conscious decision to commit drug-related offenses in blatant disregard of this policy was the thrust of all the references at issue. Obviously, the trial counsel's purposes were: first, to dispel any notion that appellant's actions were mere instances of poor judgment; and, secondly, to underscore the severity of these offenses committed by an officer who had been charged by the Commandant to help eliminate illegal drugs from the Marine Corps. In short, his remarks were legitimate comments on the state of the evidence of record. At no point did the trial counsel urge the members to consider the policy in connection with their sentencing duties. There were no exhortations to impose a harsher penalty in deference to the policy.

Viewed in its entirety, the prosecutor's argument on sentence was a vigorous, persuasive appeal to the members, urging imposition of a punishment that would be manifestly appropriate for appellant's extremely serious offenses. We need look no further than the civilian defense counsel's argument to see that the appropriateness of dismissal was open to little, if any, doubt. Significantly, there was no objection from the defense team to any portion of the government counsel's questioning of appellant or sentencing argument, demonstrating that they perceived nothing improper in the references in question.

We hold, therefore, that the trial counsel's references to the Commandant's drug policies, under the circumstances of this case, were not *improper* when measured by the *Grady* standard and thus did not constitute error.[1] Consequently, there was no requirement for the military judge to give *sua sponte* a limiting instruction pertaining to the trial counsel's remarks, and his failure to do so was not error. Even were we to conclude that the remarks were improper under *Grady,* we would still find that the failure to give such an instruction was not prejudicial to appellant's substantial rights. Considering the extreme gravity of appellant's offenses and the sentence actually imposed, as well as the nature, tenor, and purpose of the references, we perceive no fair risk that the members were unduly influenced. This conclusion finds additional support in the trial judge's explicit cautionary instruction to the members during *voir dire.* Finally, the failure of the civilian defense counsel to request a limiting instruction at the conclusion of the trial coun-

1. We interpret *Grady* to mean that not every reference to command policies before court members is improper. That decision necessarily contemplates a factual analysis, not unlike that conducted in the instant case, to determine not only if the reference was made but whether it was made *in a manner* that injected the commander into the deliberation room. Although the summary disposition in *Reitz* affords little insight, we assume that the Court of Military Appeals employed a similar factual analysis in reaching its decision. We further assume that the Court did not find prejudicial error in the mere fact that the policy was men-

tioned to the members. We make this latter assumption because the "get tough" pronouncements of the Commandant of the Marine Corps and the Chief of Naval Operations with respect to illegal drugs are common knowledge throughout the Naval Service. Among personnel likely to be appointed as members of courts-martial, moreover, knowledge of these policies is perhaps the most prevalent. To hold that the mere mention of these policies prejudicially taints the trial proceedings is to indulge in a fiction. In truth, many court members will be as familiar with these edicts as with the standing orders of a sentry.

sel's argument persuades us that he apprehended no appreciable risk of prejudice as a result of the comments. Premised on the foregoing, we find that appellant's third and fourth assignments are without merit.

In his sixth assignment, appellant now claims that one of the specifications of which he was found guilty fails to state an offense under the UCMJ. The challenged specification, which is laid under Article 134, UCMJ, avers in pertinent part that appellant wrongfully solicited an undercover civilian police officer to violate a section of the California Health and Safety Code by wrongfully selling cocaine. Appellant does not attack the sufficiency or specificity of the pleading. There is no suggestion that he was misled or that he is now concerned that the record will not afford protection against double jeopardy. Instead, it is contended that since the specification, on its face, alleges solicitation of a violation of state law, and not the UCMJ, it fails to state an offense violative of Article 134. We disagree. Although we are not aware of any decisional law directly on point, we are convinced that the solicitation of another person to commit an offense which, if committed by one subject to the UCMJ, would be punishable under the UCMJ, is an offense cognizable under Article 134. *See,* paragraph 127*c,* n. 7, MCM. We hold, therefore, that the specification in question states an offense under the UCMJ and reject the assignment.

Based on our examination of the record of trial, all assignments of error, and the government's reply thereto, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, we affirm the findings and sentence as approved on review below.

Senior Judge GORMLEY and Judge KERCHEVAL concur.